## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **CHRISTOPHER SHIVERS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CIVIL ACTION 15-0429-WS-M** |
| | ) |
| **ALABAMA RIVER CELLULOSE, GP,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (doc. 38). The court-ordered briefing schedule having expired with neither response nor acknowledgment from plaintiff, the Motion is now ripe for disposition.[1]

### I.     Nature of the Case.

Plaintiff, Christopher Shivers, who is proceeding *pro se*, is a former employee of defendant, Alabama River Cellulose, GP ("Alabama River"). In his Complaint, Shivers alleges

---

[1]     By Order (doc. 41) entered on September 28, 2016, the undersigned fixed a deadline of October 25, 2016, for plaintiff to respond to the Motion. That Order cautioned plaintiff that "[f]ailure to respond to this motion for summary judgment may result in final judgment being rendered in favor of the party who filed the motion, without a full trial. … [A] person against whom a motion for summary judgment is filed must oppose that motion by response as provided in the rules." (Doc. 41, at 2.) Notwithstanding the admonitions set forth in the September 28 Order, plaintiff elected not to respond to the Motion for Summary Judgment. The applicable briefing deadline expired weeks ago, so the Motion is properly taken under submission at this time. Plaintiff's unrepresented status does not alter this conclusion. Even *pro se* litigants are expected to comply with court orders, deadlines and rules. *See, e.g., Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (explaining that "we are to give liberal construction to the pleadings of *pro se* litigants," but that "we nevertheless have required them to conform to procedural rules") (citation omitted); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (a *pro se* party "is subject to the relevant law and rules of court" and may be sanctioned "for failure to comply with court orders"); *Johnson v. Champions*, 990 F. Supp.2d 1226, 1236 n.16 (S.D. Ala. 2014) ("even *pro se* litigants must comply with procedural rules and court orders"); General L.R. 83.5(a) ("All persons proceeding *pro se* shall be bound by, and must comply with, all Local Rules of this Court, as well as the Federal Rules of Civil and Criminal Procedure, unless excused by Court order.").

that Alabama River discriminated against him on the basis of his race (black) in terminating his

employment in October 2014.  On that theory, Shivers has brought race discrimination claims

against Alabama River pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e

*et seq.* ("Title VII"), and 42 U.S.C. § 1981.[2]

## II.     Background Facts.[3]

---

[2]         In addition to the termination-related claims, the Complaint contains multiple
vague allegations alluding to racial tension in the workplace.  For example, the Complaint
alleges that a white employee named Matt Davis "clearly acted as if he didn't like blacks," in
that he "essentially ignor[ed] black employees." (Doc. 1, ¶ 7.) Elsewhere, the Complaint states
that "the environmental locally is one in which blacks are often treated as second-class citizens,
and this attitude permeates the plant environment." (*Id.*, ¶ 16.)  Nowhere does the Complaint
expressly assert a claim for racially hostile work environment, and it is unclear from the pleading
whether Shivers intended to pursue relief on that basis.  Even assuming that he did, dismissal of
such a claim would be appropriate at this time.  It is well settled that "[t]he employee must prove
five elements if he bases his harassment claim on race: (1) that he is a member of a protected
class; (2) that he was subjected to unwelcome racial harassment; (3) that the harassment was
based on his race; (4) that the harassment was severe or pervasive enough to alter the terms and
conditions of his employment and create a discriminatorily abusive working environment; and
(5) that the employer is responsible for the environment under a theory of either vicarious or
direct liability."  *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248-49 (11th Cir. 2014)
(citation omitted).  The summary judgment record contains no evidence that might satisfy these
elements.  Most notably, any harassment appears not to have been severe or pervasive.  The
Complaint recites only a single Alabama River employee who "essentially ignor[ed] black
employees."  Moreover, Shivers expressly notified Alabama River that there was not a racism
problem, and said that "[e]veryone treats everyone decently" at the mill, with the employees
being "like a big family."  (Shivers Dep. (doc. 38, Exh. 2), at 105, 108.)  And plaintiff's bald,
conclusory assertion that "blacks are often treated as second-class citizens" at the mill is too
vague to create a genuine issue of material fact.  *See, e.g., Leigh v. Warner Bros., Inc.*, 212 F.3d
1210, 1217 (11th Cir. 2000) ("conclusory allegations without specific supporting facts have no
probative value") (citation omitted); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.
1985) ("Bald conclusions … do not create a genuine issue of material fact.").  On this record, no
reasonable factfinder could conclude that Shivers was subjected to severe or pervasive racial
harassment at the Alabama River plant; therefore, any hostile work environment claim obliquely
raised in the Complaint is properly dismissed for lack of evidentiary support.

[3]         Courts are generally obliged under Rule 56 to construe the record, including all
evidence and factual inferences, in the light most favorable to the nonmoving party.  *See Skop v.
City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Thus, plaintiff's evidence (had he
presented any) would be taken as true and all justifiable inferences are drawn in his favor.  Here,
however, plaintiff has not responded to the Motion for Summary Judgment.  Under the Federal
Rules of Civil Procedure, when a party "fails to properly address another party's assertion of fact
as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the
motion" and "grant summary judgment if the motion and supporting materials – including the
(Continued)

Defendant, Alabama River Cellulose GP, operates a mill in Perdue Hill, Alabama, that manufactures specialty fluff and market pulp used in products such as diapers and hygiene products. (Blaylock Decl. (doc. 38, Exh. 1), ¶¶ 1-2.) Shivers was employed continuously at the mill from 1995 until October 2014. (Shivers Dep. (doc. 38, Exh. 2), at 33.) At all relevant times, Shivers worked in the mill's power and recovery department as a recovery boiler operator. (*Id.* at 34-36.) Of some significance, Shivers received a disciplinary suspension from Alabama River in February 2014 after leaving a mandatory HAZMAT training session to rest in his personal automobile without clocking out. (Wiggins Decl. (doc. 38, Exh. 3), ¶ 6.) In conjunction with that disciplinary suspension, Alabama River admonished Shivers that his employment could be terminated if further issues arose. (*Id.*)[4]

In July 2014, Alabama River hired a white employee named Chris Whitfield. (Martin Decl. (doc. 38, Exh. 4), ¶ 3.) Whitfield had previously been employed as a police officer in Grove Hill, Alabama. (Shivers Dep., at 89.) Whitfield was assigned to the mill's power and recovery department, just as Shivers was. On September 12, 2014, Whitfield contacted an Alabama River human resources representative named Deaundra Martin to report disparaging treatment by several African-American co-workers. (Martin Decl., ¶ 4.) Specifically, Whitfield notified Martin that a black employee named Stephanie Dale had refused to train him and, after bringing up the recent high-profile police shooting in Ferguson, Missouri, had started calling him by the derogatory nickname "killer." (*Id.*)[5] Whitfield further complained to Martin that two

---

facts considered undisputed – show that the movant is entitled to it." Rule 56(e)(2)-(3), Fed.R.Civ.P. Thus, the Court's inquiry with respect to record facts is not whether plaintiff might have disputed facts alleged by defendant on summary judgment, but whether "the motion itself is supported by evidentiary materials." *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

[4]     Plaintiff has not brought a claim for race discrimination relating to the February 2014 suspension; however, he did state during his deposition that, in his view, the incident "didn't warrant a suspension. I felt it could have been a write-up at the most." (Shivers Dep., at 136-37.) Of course, such idle second-guessing is not the stuff of a Title VII or § 1981 violation.

[5]     The Court takes judicial notice that the Ferguson, Missouri incident involved a white police officer fatally shooting an unarmed black teenager named Michael Brown in August 2014. The highly publicized shooting and ensuing civil rights investigation sparked unrest in Ferguson and fed into a national debate as to the use of deadly force by police officers against African-American suspects.

other black co-workers, Shivers and James Hurst, had asked him what he thought about the Ferguson shooting, and then had begun calling him "killer" too. (*Id.*) Also on September 12, Whitfield submitted a written complaint to Alabama River confirming his report to Martin. (*Id.*, ¶ 5.)[6]

In response to Whitfield's internal complaint, Martin and Human Resources Manager Anita Wiggins promptly launched an investigation, pursuant to which they interviewed eight employees, including Shivers. (*Id.*, ¶ 6; Wiggins Decl. (doc. 38, Exh. 3), ¶ 3.) At that time, Shivers admitted that he had used the nickname "killer" for Whitfield on one occasion, but had then dropped it, and acknowledged that "with everything that was going on in St. Louis, he could see why it was offensive." (Martin Decl., ¶ 7.)[7]

During the course of the Alabama River investigation, Whitfield notified Wiggins that he felt threatened by Shivers for having complained to the company about his work environment. (Wiggins Decl., ¶ 4.) To support these new allegations, Whitfield furnished Wiggins with recordings of conversations between Shivers and Whitfield. (*Id.*) Shivers concedes the accuracy and authenticity of those recordings. (Shivers Dep., at 109.) Included in those recordings was a conversation in which Whitfield asked how he could straighten things out (referencing his internal complaint and the ongoing HR investigation), and Shivers responded, "dude, at this point, you can't straighten it out." (*Id.* at 110.) Shivers also told Whitfield, "it's just like interrogation, you've got your rats out there." (*Id.* at 115.) In his deposition, Shivers indicated that his reference to "rats" meant "someone as going back, telling someone in authority what's

---

[6]    In relevant part, Whitfield's written complaint to Alabama River stated as follows: "Mrs. Dale continued to call me 'killer'. At the time she started calling me 'killer' Mr. James Hurst and Mr. Christopher Shivers also started calling me 'killer'. One night Mrs. Dale asked me if I was offended by her calling me 'killer?' I told her that I found it offensive that what the other officer did had nothing to do with me as an officer. ... Mrs. Dale has continued to call me 'killer'. ... These statements made me feel very uncomfortable and made me question if I could trust them." (Martin Decl., ¶ 5 & Att. A.)

[7]    Shivers echoed this sentiment in his deposition by testifying that, with respect to the nickname "killer" applied to Whitfield, "Being an ex-cop, I wouldn't want that label on me. ... I wouldn't want nobody to think that I'm a – people could perceive it wrong." (Shivers Dep., at 118.) Thus, Shivers concedes that such a nickname could cause the recipient to feel uncomfortable or could be perceived as hostile, especially when directed at a white ex-police officer in the aftermath of the Ferguson, Missouri shooting.

happening in their circle." (*Id.*)  Shivers characterized his recorded discussions with Whitfield as follows: "I was trying to refer to the fact that he didn't want to be on this job and [have] everybody mad with him." (*Id.* at 116.)

At the conclusion of their investigation, both Wiggins and Martin (the two Alabama River human resources representatives) concurred that Shivers' employment should be terminated. (Martin Decl., ¶ 8; Wiggins Decl., ¶ 5.)  In particular, Wiggins (the HR Manager) concluded that Shivers' conduct – both in using the derogatory term "killer" in reference to Whitfield and in his subsequent intimidating comments directed at Whitfield for having complained  – contravened Alabama River's expectation that its employees must foster a respectful and inclusive workplace. (Wiggins Decl., ¶ 6.)[8]  Finding that Shivers was one of several employees who had created a hostile environment for Whitfield, Wiggins also considered Shivers' recent disciplinary history, including his February 2014 suspension in which he had been warned of termination if there were further issues. (*Id.*)

After developing her recommendations that Shivers and three other employees be terminated for their roles in creating the hostile environment of which Whitfield had complained, Wiggins consulted with a host of Alabama River officials, including Terry Reed (Vice President of Human Resources), Tommy Blaylock (Operations Excellence Leader), Tim McIlwain (highest management at the mill), Bridget Hawkins (EEO Coordinator) and Steve Sides (manager over the power and recovery department). (Wiggins Decl., ¶ 7.)  All of them concurred with the recommendations. (*Id.*)  On or about October 3, 2014, Alabama River announced its disciplinary decisions in response to the Whitfield complaints.  Pursuant to those decisions, Stephanie Dale (the employee who had come up with the nickname "killer" and had refused to train Whitfield), Shivers, and Billy Cosson (a white crew leader who oversaw the affected employees, and had failed to exert proper leadership) were all fired. (Blaylock Decl., ¶¶ 7-8.)  A fourth employee, James Hurst (who is black) was "disciplined short of termination" because his involvement was less than Dale's and (unlike Shivers) he had no prior disciplinary record. (*Id.*)

---

[8]     The company's expectation in this regard is formalized in written materials.  For example, the Code of Conduct lists ten "Guiding Principles," one of which is "Respect," with the description, "Treat others with honesty, dignity, respect and sensitivity.  Appreciate the value of diversity.  Encourage and practice teamwork." (Doc. 38-1, at 8.)  Shivers acknowledged that "[t]he guiding principles was there on display" in the workplace. (Shivers Dep., at 81.)

### III.    Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

The Eleventh Circuit has expressly rejected the notion that summary judgment should seldom be used in employment discrimination cases because they involve issues of motivation and intent.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004).  Rather, "the summary judgment rule applies in job discrimination cases just as in other cases.  No thumb is to be placed on either side of the scale."  *Id.* at 1086 (citation omitted); *see also Williamson v. Clarke County Dep't of Human Resources*, 834 F. Supp.2d 1310, 1318 (S.D. Ala. 2011) (recognizing and applying rule that summary judgment standard is applied equally in employment discrimination cases as in other kinds of federal actions).

As mentioned, Shivers elected not to respond to Alabama River's Motion for Summary Judgment.  Applicable law is clear that "[s]ummary judgment is not automatically granted by virtue of a non-movant's silence."  *Williams v. Aircraft Workers Worldwide, Inc.*, 832 F. Supp.2d

1347, 1352 (S.D. Ala. 2011).[9]  If a nonmovant fails to respond to a summary judgment motion, then the movant's assertions of facts supported by record evidence may be deemed "undisputed for purposes of the motion."  Rule 56(e)(2), Fed.R.Civ.P.  In that scenario, the court may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Rule 56(e)(3).  In performing that analysis, a court is not obligated to read minds and ordinarily will not construct arguments or theories that a party has failed to raise.[10]  As such, Shivers' failure to proffer argument, evidence or authority in response to defendant's Rule 56 Motion is at his peril.  Such an omission imparts no burden on this Court to "fill in the blanks" in the legal analysis and briefing on his behalf.[11]  Nor will the Court scour uncited portions of the record in search of evidence that might bolster plaintiff's position.  *See, e.g.,* Rule 56(c)(3) ("[t]he court need consider only the cited materials" on summary judgment); *King v. ST Aerospace Mobile, Inc.*, 2013 WL 2635926, *1 n.1 (S.D. Ala. June 11, 2013) ("This Court will not scour uncited portions of those exhibits in hopes of unearthing potentially helpful factual nuggets that the parties have not addressed.").

---

[9]    "Even in an unopposed motion [for summary judgment], … the movant is not absolve[d] … of the burden of showing that it is entitled to judgment as a matter of law."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citations and internal quotation marks omitted); *see also One Piece of Real Property*, 363 F.3d at 1101 ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion … [and] ensure that the motion itself is supported by evidentiary materials.");  Commentary to 2010 Amendments to Fed.R.Civ.P. 56(e) ("summary judgment cannot be granted by default even if there is a complete failure to respond to the motion").

[10]    *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by the parties"); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (noting that a litigant "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions") (citation omitted).

[11]    *See, e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. … Rather, the onus is upon the parties to formulate arguments ….") (citations omitted); *Godfrey v. Nationwide Vinyl Siding & Home Imp., LLC*, 912 F. Supp.2d 1320, 1330 (S.D. Ala. 2012) ("On summary judgment, the Court cannot 'fill in the blanks' to formulate a legal argument that a party has not."); *Minemyer v. B-Roc Representatives, Inc.*, 695 F. Supp.2d 797, 809 (N.D. Ill. 2009) ("[T]his is an adversarial system.  It is not a court's task to research legal arguments on a party's behalf.").

## IV.    Analysis.

Absent direct evidence of race discrimination (which plaintiff has not identified and which does not appear in the record), Shivers must make a showing of circumstantial evidence that satisfies the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[12]   Under this familiar burden-shifting analysis, plaintiff is required to make out a *prima facie* case of unlawful race discrimination.   If he does so, that showing "creates a rebuttable presumption that the employer acted illegally."   *Underwood v. Perry County Com'n*, 431 F.3d 788, 794 (11th Cir. 2005).   At that point, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. ... If the employer does this, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination."   *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (citations and internal quotation marks omitted).   A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."   *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted).   "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."   *Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007).

"In race-discrimination cases, a plaintiff makes out a *prima facie* case when he shows by a preponderance of the evidence (1) that he is a member of a protected racial class, (2) that he was qualified for the position, (3) that he experienced an adverse employment action, and (4) that he was replaced by someone outside of his protected class or received less favorable treatment

---

[12]    Although plaintiff's claims are nominally brought under both 42 U.S.C. § 1981 and Title VII, the applicable legal standard is identical.   *See, e.g., Brown v. Alabama Dep't of Transportation*, 597 F.3d 1160, 1174 n.6 (11th Cir. 2010) ("The analysis under [§ 1981] claims mirrors that under Title VII."); *Rice-Lamar v. City of Fort Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000) ("The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context."); *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060 (11th Cir. 1994) ("The *McDonnell Douglas* scheme for the allocation of burdens and the order of presentation of proof also applies in § 1981 cases involving discriminatory treatment in employment situations."); *Brown v. School Bd. of Orange County, Florida*, 459 Fed.Appx. 817, 819 (11th Cir. Feb. 28, 2012) ("Title VII and § 1981 have the same requirements of proof and utilize the same analytical framework.").

than a similarly situated person outside of his protected class." *Flowers v. Troup County, Ga., School Dist.*, 803 F.3d 1327, 1336 (11ᵗʰ Cir. 2015) (citations omitted); *see also McCann v. Tillman*, 526 F.3d 1370, 1373 (11ᵗʰ Cir. 2008) (similar).  In its Motion for Summary Judgment, Alabama River correctly points out that Shivers has not established the fourth element by a preponderance of the evidence.  The record is silent as to the identity and race of the person who replaced Shivers.  Moreover, there is no evidence that might support a reasonable inference that Shivers was treated less favorably than a similarly situated person outside of his protected class. In the work rules / discipline context, the Eleventh Circuit has adopted a demanding test that the comparator be "similarly situated to the plaintiff in all relevant respects" and that the "quantity and quality of the comparator's misconduct must be nearly identical." *Stone & Webster Const., Inc. v. U.S. Dep't of Labor*, 684 F.3d 1127, 1135 (11ᵗʰ Cir. 2012) (citations omitted).  "We ask whether the comparator is involved in the same or similar conduct as the plaintiff yet disciplined in a different way." *Id.*[13]

Here, there is no evidence that any white Alabama River employee referred to Whitfield by the nickname "killer" or that white employees used offensive nicknames with regard to their black counterparts at Alabama River, much less that they received disparate discipline for doing so.  To the contrary, it is noteworthy that Alabama River terminated the employment of a white employee (Billy Cosson) for his role in allowing a hostile environment to fester against Whitfield, just as it terminated the employment of two black employees (Shivers and Dale) for contributing to that hostile environment.  Thus, far from treating similarly situated employees of different races differently in the imposition of discipline, the record establishes that Alabama River treated employees of different races exactly the same as to the Whitfield incident.[14]  In the

---

[13]    The purpose of this stringent "nearly identical" requirement is "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1259 (11ᵗʰ Cir. 2001) (citations omitted).

[14]    It is no answer to suggest, as Shivers appears to have done, that sometime prior to 2010 employees at the mill had referred to a white crew leader named Bobby Edwards as "killer." (Shivers Dep., at 103-04.)  There is no evidence – and no reason to believe – that Edwards had previously served in law enforcement, that he found the nickname offensive, or that he ever complained to company management about that nickname.  Moreover, Alabama River did not even operate the mill at that time because it did not acquire that facility until 2010.  In short, nothing about the Edwards situation raises a reasonable inference of disparate discipline or any basis for concluding that Alabama River disciplined black employees who used offensive, (Continued)

-9-

absence of any showing of similarly-situated comparators, or other facts giving rise to a triable issue concerning Alabama River's discriminatory intent,[15] Shivers has failed to meet his burden of establishing a *prima facie* case of race discrimination; therefore, his Title VII and § 1981 claims fail as a matter of law.

Even assuming that Shivers had made the requisite *prima facie* showing (which he did not), dismissal of his claims would remain appropriate.  When a plaintiff establishes a *prima facie* case of race discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged personnel decision.  To meet this burden, Alabama River posits that it fired Shivers for violating the company's "respect" guiding principle by using the derogatory nickname "killer" for a white colleague who was formerly a police officer, and by intimidating or otherwise making that colleague feel uncomfortable after he made an internal complaint about the unwelcome nickname, all after a prior disciplinary suspension in which Alabama River had cautioned Shivers that further misconduct could jeopardize his employment status.  This explanation plainly satisfies defendant's modest burden of production.

Alabama River having expressed a legitimate nondiscriminatory reason for Shivers' discharge, it becomes incumbent on plaintiff to demonstrate pretext.  "In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual."  *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000).  To show that a stated reason is pretext for

---

inappropriate nicknames for coworkers more severely than it disciplined white employees for similar misconduct.  *See generally Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 n.17 (11th Cir. 2011) (where preferentially treated individual is not similarly situated to plaintiff in all relevant respects, "the different application of workplace rules does not constitute illegal discrimination") (citation omitted).  More broadly, in the time that Alabama River has been operating the Perdue Hill mill, Whitfield was the first employee who ever came forward to complain about an inappropriate nickname or offensive name-calling.  (Wiggins Decl., ¶ 9.)  There is thus a failure of proof as to the similarly-situated comparator requirement.

[15]      Of course, the Eleventh Circuit has clarified that "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in Title VII cases. … The critical decision that must be made is whether the plaintiff has created a triable issue concerning the employer's discriminatory intent."  *Flowers*, 803 F.3d at 1336 (citations and internal marks omitted).  Shivers has not done so.

unlawful discrimination, the plaintiff "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 771 (11th Cir. 2005) (quotation omitted).[16]  "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. … Quarreling with that reason is not sufficient." *Wilson*, 376 F.3d at 1088.  Additionally, "[i]f the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007).

Shivers has failed to make the necessary showing of pretext to undermine Alabama River's stated explanation for terminating his employment.  To be sure, he appears to argue that he only used the word "killer" in reference to Whitfield on a single occasion; however, he does not dispute, and cannot reasonably dispute, that Alabama River conducted a thorough investigation during which it received information that Shivers had engaged in more extensive wrongdoing.  Of course, an employee cannot succeed on a discrimination case by "simply quarreling with the wisdom of" an employer's decisions.  *Chapman*, 229 F.3d at 1030.  After all, "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions."  *Id.* (citation and internal quotation marks omitted).  They do not concern themselves with "how medieval a firm's practices" or "how mistaken the firm's managers" might be.  *Id.*; *see also Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("it is not our role to second-guess the wisdom of an employer's business decisions – indeed the wisdom of them is irrelevant"); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair.").  Any argument that Alabama River should not have credited evidence obtained in this investigation because Shivers disagrees would not and could not establish the necessary inference of pretext.

---

[16]     *See also Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (plaintiff may satisfy burden of showing pretext "by showing that [defendant's] proffered reasons are not credible"); *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1278 (11th Cir. 2008) ("The plaintiff must demonstrate weaknesses or implausibilities in the employer's proffered legitimate reasons for its action sufficient for a reasonable factfinder to disbelieve the reasons.").

Nor can Shivers establish pretext sufficient to withstand summary judgment via his testimony that "I believe that Steve Sides didn't like black people, nor did Matt Davis." (Shivers Dep., at 126.)  Davis was one of Shivers' supervisors; however, defendant's uncontroverted evidence is that he had no involvement in the termination decision.  (Wiggins Decl., ¶ 8.)  As for Sides (manager of the power and recovery department), his role in the challenged personnel decision was confined to being one of several Alabama River managers who concurred with the recommendation by human resources personnel (Wiggins and Martin) that Shivers be discharged.  (*Id.*, ¶¶ 7-8.)  There are no record facts that might support a conclusion that Shivers' termination was tainted by racial animus from Sides.[17]  More fundamentally, Shivers has identified no evidence that Sides was racially biased, much less that he targeted Shivers with any such animus.[18]

In short, even if Shivers had established a *prima facie* case of race discrimination, his Title VII and § 1981 claims would still fail as a matter of law.  Alabama River has identified

---

[17]    No evidence has been presented that might align this case with a "cat's paw" theory of liability, or that might support the requisite proximate causation between Sides' purported animus and the termination decision.  *Cf. Sims v. MVM, Inc.*, 704 F.3d 1327, 1335 (11th Cir. 2013) ("an employer could be liable when the decision-maker has no discriminatory animus but is influenced by a subordinate supervisor's action that is the product of such discriminatory animus (cat's paw liability)"); *see generally Staub v. Proctor Hosp.*, 562 U.S. 411, 420-21, 131 S.Ct. 1186, 179 L.Ed.2d 144 (2011) ("[T]he requirement that the biased supervisor's action be a causal factor of the ultimate employment action incorporates the traditional tort-law concept of proximate cause. … The employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision.").

[18]    To be sure, Shivers indicated in his deposition that (i) he had been told that Sides had said bad things about him, (ii) Sides had deprived him of performance pay in 2012, and (iii) Sides had ignored him.  (Shivers Dep., at 126.)  None of these circumstances would allow a jury to reach a reasonable inference that Sides was biased against Shivers because of race.  First, hearsay comments that someone whose name Shivers does not know told him that Sides called him "sorry" and "ignorant" would be inadmissible hearsay and could not be reduced to admissible form at trial.  (*Id.* at 129.)  Second, it is undisputed that Sides did recommend Shivers for performance pay in 2013.  (Martin Decl., ¶ 10.)  Third, Shivers admitted that (i) Sides had never said anything to him suggesting that Sides disliked him, (ii) no one ever told him that Sides had made racially inflammatory comments, and (iii) Shivers had told Alabama River officials that he was unaware of any racism in the department.  (Shivers Dep., at 105, 131, 133.)  This record simply does not support a reasonable inference that Sides harbored race-based animus against Shivers or anyone else.

legitimate nondiscriminatory reasons for terminating Shivers' employment, and the record is devoid of weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in those proffered legitimate reasons that might enable a reasonable factfinder to find them unworthy of credence.  Thus, Shivers has failed to show pretext as required under the *McDonnell Douglas* test.

**V.      Conclusion.**

For all of the foregoing reasons, the Court concludes that there are no genuine issues of material fact and that defendant is entitled to entry of judgment in its favor as a matter of law. As such, defendant's Motion for Summary Judgment (doc. 38) is **granted** and this action is **dismissed with prejudice**.  A separate judgment will enter.

DONE and ORDERED this 29th day of November, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE